Mark E. Merin (State Bar No. 043849)
**LAW OFFICE OF MARK E. MERIN**
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:  (916) 443-6911
Facsimile:  (916) 447-8336
E-Mail:  mark@markmerin.com

Dan Siegel (State Bar No. 56400)
Jose Luis Fuentes (State Bar No. 192236)
**SIEGEL & YEE**
499 14th Street, Suite 300
Oakland, CA 94612
Telephone:  (510) 839-1200
Facsimile:  (510) 444-6698
E-Mail:  danmsiegel@gmail.com
         jlf@siegelyee.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER COSTA, RENEE DELGADO, STEPHEN BAUMANN, JONATHAN JONES, SHANNON TAYLOR, EMILY BOGGUS, STEVEN VEGA, YEKATERINA ("KAT") KALMYKOV, GABRIEL SANTOYO, ROBERT REMEL, SAGE LOPEZ, ANGELO MARTINEZ, JOSEPH OROPESA, MARQUISE ZEIGLER, JORDAN POLK, TONY JIMENEZ AND SHAHJAHEN SIDDIQUE,<br><br>Plaintiffs,<br><br>vs.<br><br>THE COUNTY OF SACRAMENTO; VERNE L. SPEIRS, Chief Probation Officer of Sacramento County, in his official and individual capacities from 1993-2009; DON MEYER, Chief Probation Officer of Sacramento County, in his official and individual capacities; TRACY BENNETT, Director, Sacramento County Department of Health and Human Services, in her official and individual capacities; PROBATION STAFF WILBON, in her official and individual capacities; PROBATION OFFICER PERALTA, in her official and individual capacities; PROBATION STAFF JOHNSTON, in an official | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS; 42 U.S.C. §1983**<br><br>**DEMAND FOR JURY TRIAL** |

1

and individual capacities; PROBATION STAFF HILL, in an official and individual capacities; PROBATION STAFF BARKER, in an official and individual capacities; PROBATION STAFF HARPER, in an official and individual capacities ; PROBATION STAFF RICARD, in his official and individual capacities; PROBATION OFFICER BALLS, in his official and individual capacities; PROBATION STAFF CASTANON, in his official and individual capacities; PROBATION STAFF JOSE CERVANTES, in his official and individual capacities; PROBATION STAFF CARILLO, in his official and individual capacities; PROBATION DONALD PARKER, in his official and individual capacities; PROBATION STAFF RESSINO, in his official and individual capacities,

Defendants.

## I.  INTRODUCTION

1. Plaintiffs, who were juveniles in the custody of the County of Sacramento at the time the events alleged herein occurred, were all subjected to physical and emotional injury as a result of the defendants' policy, practice, and custom of subjecting juveniles in the care and custody of the Sacramento County Probation Office to excessive force.  Furthermore, defendants were deliberately indifferent to the serious medical and psychological needs of plaintiffs, juveniles in their custody, who were subjected to excessive force by defendants and their staff.

2. This action seeks damages resulting from the violation of the Federal and State Constitutional and statutory rights guaranteed to plaintiffs.  Plaintiffs also seek declaratory and injunctive relief.

## II.  JURISDICTION

3. This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. §1331 (in that it arises under the Constitution of the United States) and §1343(a)(3) (in that it is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution).

4.      Venue is proper in the United State District Court for the Eastern District of California under 28 U.S.C. §1391(b).  Defendants are located in the Eastern District, and all of the acts and/or omissions complained of herein have occurred or will occur in this District.

### III.    GENERAL FACTUAL ALLEGATIONS

5.      Youth residents in the Sacramento County Juvenile Hall are subjected to an entrenched culture of violence arising from resident-resident and staff-resident violence that results in a pattern of unnecessary, disproportionate, and excessive force by probation officers that goes well beyond the good-faith effort to maintain or restore discipline.  The pervasiveness of staff-resident violence is the result of frequently use violent practices often known as dipping whereby Defendants willfully, maliciously, and systematically slam, push, throw, bump, swung trip and/or drag the juvenile on or into solid surfaces, using unnecessary, disproportionate, and excessive force for the purpose and with the effect of inflicting cruel and unusual punishment.  The *Sacramento County Probation Department Policy and Procedure-Juvenile Hall* on use of force established a centralized policy of deliberate indifference to the use of unnecessary, disproportionate, and excessive force by probation officers in violation of Cal. Code of Regs., tit. 15, §§1357 (Use of Force), 1390 ("[d]iscipline shall not include corporal punishment, physical or psychological degradation").

6.      Defendants and others inflict excessive force for no reason at all or in response to alleged youth resident violations such as talking back to staff; failing to maintain proper position in line; standing up in a dorm room (as opposed to staying on the bed); looking up at staff; failing to get down quickly enough during unit alarms; talking with other minors during line-up; making complaints about lack of exercise time or medical care; urinating on the floor after bathroom requests are denied; and/or talking during movies.  Defendants often drive their knees into plaintiffs' backsides when they are already lying face down on the ground.  Staff members slam plaintiffs' faces to the floor for no valid reason.  County probation staff routinely failed to document use of force incidents, instigated and/or condoned resident-resident violence, and fabricated claims of provocation to cover up staff assaults of juveniles.

7.      After the use of excessive force, residents are often sent to holding cells where they

3

are deprived of outer clothing and left in their underwear with inadequate medical attention. The cells are often cold, and residents are not provided with blankets or warm clothing. The practice of the use of unnecessary, disproportionate, and excessive force and the culture of violence among resident-resident and staff-resident fosters a climate of fear among wards, who are well aware of this pervasive, harmful, and deliberate practice of indifference by Juvenile Hall staff and officials to their physical and mental health needs.

## IV.  PARTIES

8. Plaintiff TYLER COSTA is a former resident of the County of Sacramento Juvenile Hall.

9. Plaintiff RENEE DELGADO is a former resident of the County of Sacramento Juvenile Hall.

10. Plaintiff STEPHEN BAUMANN is a former resident of the County of Sacramento Juvenile Hall.

11. Plaintiff JONATHAN JONES is a former resident of the County of Sacramento Juvenile Hall.

12. Plaintiff SHANNON TAYLOR is a former resident of the County of Sacramento Juvenile Hall.

13. Plaintiff EMILY BOGGUS is a former resident of the County of Sacramento Juvenile Hall.

14. Plaintiff STEVEN VEGA is a former resident of the County of Sacramento Juvenile Hall.

15. Plaintiff YEKATERINA ("KAT") KALMYKOV is a former resident of the County of Sacramento Juvenile Hall.

16. Plaintiff GABRIEL SANTOYO is a former resident of the County of Sacramento Juvenile Hall.

17. Plaintiff ROBERT REMEL is a former resident of the County of Sacramento Juvenile Hall.

4

**CIVIL RIGHTS COMPLAINT; JURY TRIAL DEMANDED**
*Costa vs. County of Sacramento, et al.,* USDC, Eastern District, Case No.

18. Plaintiff SAGE LOPEZ is a former resident of the County of Sacramento Juvenile Hall.

19. Plaintiff ANGELO MARTINEZ is a former resident of the County of Sacramento Juvenile Hall.

20. Plaintiff JOSEPH OROPESA is a former resident of the County of Sacramento Juvenile Hall.

21. Plaintiff MARQUISE ZEIGLER is a former resident of the County of Sacramento Juvenile Hall.

22. Plaintiff JORDAN POLK is a former resident of the County of Sacramento Juvenile Hall.

23. Plaintiff TONY JIMENEZ is a former resident of the County of Sacramento Juvenile Hall.

24. Plaintiff SHAHJAHEN SIDDIQUE is a former resident of the County of Sacramento Juvenile Hall.

25. Defendant COUNTY OF SACRAMENTO ("County") is a public entity, operating under the laws of the State of California, which is responsible for all of the acts and omissions of the Chief Probation Officer, Director of Sacramento County Department of Health and Human Services, and of the acts and omissions of all agents and employees of the Probation Department and Department of Health and Human Services, including all of those individuals named in paragraphs 29 through 41 of this Complaint.

26. Defendant VERNE L. SPEIRS was the Chief Probation Officer of Sacramento County from 1993-2009 and is sued herein in his official and individual capacities. As Chief Probation Officer, SPEIRS was ultimately responsible for the operation of Sacramento County juvenile halls and camps, including decisions concerning the *Sacramento County Probation Department Policy and Procedure-Juvenile Hall,* the budget, staff deployment, programming, and staff training that directly affect the expenditure of funds on juvenile hall facilities. Cal. Code of Regs., tit. 15, §1357 (Use of Force).

27. Defendant DON MEYER is the Chief Probation Officer of Sacramento County

5

1 from 2009 to the present and is sued herein in his official and individual capacities.  As Chief
2 Probation Officer, Meyer is ultimately responsible for the operation of Sacramento County
3 juvenile halls and camps, including decisions concerning the *Sacramento County Probation*
4 *Department Policy and Procedure-Juvenile Hall*, budget, staff deployment, programming, and
5 staff training that directly affect the expenditure of funds on juvenile hall facilities. Cal. Code of
6 Regs., tit. 15, §1357 (Use of Force).

7      28.    TRACY BENNETT is the Director, Sacramento County Department of Health and
8 Human Services, and is sued herein in that capacity.   As Director of Department of Health and
9 Human Services, Bennett is ultimately responsible for the operation of the medical clinic,
10 including decisions concerning the budget, staff deployment, programming, and staff training
11 that directly affect the expenditure of funds on juvenile hall facilities.

12      29.    Defendant WILBON (PHONETIC) is a member of the probation department staff,
13 and is sued herein in her official and individual capacities.  She operates under the control and
14 direction and pursuant to the policies, practices, and procedures of Defendant County which is
15 liable for her acts and omissions.

16      30.    PROBATION STAFF PERALTA is a member of the probation department staff,
17 and is sued herein in her official and individual capacities.  Peralta operates under the control
18 and direction and pursuant to the policies, practices, and procedures of Defendant County
19 which is liable for her acts and omissions.

20      31.    PROBATION STAFF JOHNSTON is a probation department staff, and is sued
21 herein in official and individual capacities.  Johnston operates under the control and direction
22 and pursuant to the policies, practices and procedures of Defendant County which is liable for
23 the acts and omissions.

24      32.    PROBATION STAFF HILL is a probation department staff, and is sued herein in
25 official and individual capacities.  Hill operates under the control and direction and pursuant to
26 the policies, practices and procedures of Defendant County which is liable for the acts and
27 omissions.

28      33.    PROBATION STAFF BARKER is a probation department staff, and is sued herein

in official and individual capacities. Barker operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for the acts and omissions.

34.     PROBATION STAFF HARPER is a probation department staff, and is sued herein in her official and individual capacities.  Harper operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for her acts and omissions.

35.     PROBATION STAFF RICARD is a probation department staff, and is sued herein in his official and individual capacities.   Ricard operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

36.     PROBATION STAFF BALLS (PHONETIC)  is a probation department staff, and is sued herein in official and individual capacities.  Balls operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for the acts and omissions.

37.     PROBATION STAFF CASTANON is a probation department staff, and is sued herein in his official and individual capacities.  Castanon operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

38.     PROBATION STAFF JOSE CERVANTES is a probation department staff, and is sued herein in his official and individual capacities.  Cervantes operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

39.     PROBATION STAFF CARILLO is a probation department staff, and is sued herein in his official and individual capacities.  Carillo operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

40.     PROBATION STAFF DONALD PARKER is a probation department staff, and is

sued herein in his official and individual capacities.  Parker operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

41.     PROBATION STAFF RESSINO is a probation department staff, and is sued herein in his official and individual capacities.  Ressino operates under the control and direction and pursuant to the policies, practices and procedures of Defendant County which is liable for his acts and omissions.

## V.     STATEMENT OF FACTS

### Background

42.     Each California county is required by law to provide and maintain, at the expense of the county, a "juvenile hall" for "wards and dependent children of the juvenile court" and for "persons alleged to come within the jurisdiction of the juvenile court."  Cal. Wel. & Inst. Code §850.  By statutory mandate, the juvenile hall is not to be "treated as a penal institution," but instead is required to be "a safe and supportive homelike environment."  Cal. Wel. & Inst. Code §851.  The county probation department is to operate the juvenile hall "under the management and control of the probation officer."  Cal. Wel. & Inst. Code §852.

43.     In violation of California laws and federal laws, the Sacramento County Juvenile Hall is not being operated as safe and supportive homelike environments and is instead operated in many respects as a penal facility where there exists a culture of violence that fosters resident-resident, staff-resident violence, and where county officials are deliberately indifferent to employees inflicting unnecessary, disproportionate, and excessive physical punishment on wards and dependent children.  See Cal. Wel. & Inst. Code §850.

44.     On information and belief, certain plaintiffs were targeted by probation staff for forcible treatment based on their submitting or having others submit on their behalf, grievances alleging violations of their rights and seeking redress.

45.     Defendants Speirs and Meyer employed no adequate or appropriate means to regulate, control, or prevent staff use of restraints, and use of unnecessary, disproportionate, and excessive force. Defendant Bennett employed no adequate or appropriate means to regulate

or control staff's inadequate medical treatment of injured juveniles who were in need of immediate medical care.  Defendants Speirs, Meyer, and Bennett had an affirmative duty to properly screen, train, and supervise all of those individuals named in paragraphs 29 through 41 of this Complaint but failed to do so, resulting in the actions and violations of the rights of plaintiffs and others described herein.  As a result of the negligent hiring and retention of all of those individuals named in paragraphs 29 through 41 of this Complaint, they were enabled personally to commit the violations described herein and to supervise and direct other staff in the commission of the acts and violations described herein.

### TYLER COSTA

46.  Plaintiff Costa was around 11 years old when he first experienced excessive force by probation staff.   He woke up in the middle of the night because he couldn't sleep.  Probation staff took him out of his dorm and placed him in a solitary holding tank with only a bed in it, and he was made to strip down to his underwear.  After a few hours, probation staff came to get him.  Costa was pushed into a wall by the staff on their way out.

47.  Plaintiff Costa's second encounter with excessive force by probation staff was when he was around 14 years old.  Probation staff Hill, Barker, and a third staff rushed into the dorm and grabbed Costa.  Costa was thrown to the ground, and one of the staff twisted his wrist behind his back while he was on the ground applying the handcuffs.

### RENEE DELGADO

48.  Plaintiff Delgado was around 13 years old when she first experienced excessive force by probation staff.  Probation staff Peralta, in the presence of probation staff Johnston and Wilbon, approached Delgado.  Peralta grabbed Delgado's arm.  Peralta then twisted Delgado's arm upwards from behind while holding Delgado's wrist.  Peralta then pushed Delgado to the ground.  Delgado's right arm below the shoulder slammed on the concrete causing a scrape.

49.  Plaintiff Delgado's next encounter with excessive force from probation staff was in 2005 when she was pregnant.  Delgado was lying on her stomach in bed.  Probation staff

9

**CIVIL RIGHTS COMPLAINT; JURY TRIAL DEMANDED**
*Costa vs. County of Sacramento, et al.,* USDC, Eastern District, Case No.

Wilbon came into Delgado's room and said, "I'll dip you if you don't get up now." Wilbon then grabbed Delgado's arms from behind, dragged her off the bed, and threw her to the ground face-first. Delgado's stomach hit the ground first and then her cheek. Delgado's stomach hurt, and she had a bruised cheek. She was taken to medical staff.

### STEPHEN BAUMANN

50.     Plaintiff Bauman encountered excessive force by probation staff the second time he was in defendants' care. Bauman needed to use the restroom at night. The probation staff denied his request because it was "too late." Bauman continue to press the buzzer but continued to be denied restroom access. Bauman tried to go back to sleep but was unable to. Bauman attempted to urinate into an empty milk carton, but the carton tipped over and urine began to run under the cell door. Probation staff stormed into Bauman's cell. Bauman was grabbed from behind and slammed head first into the wall. Bauman sustained a cut under his right eye. Bauman had to mop up the urine.

### JONATHAN JONES

51.     Jones' first experience with excessive force was when probation staff Ricard, in the presence of probation staff Harper, dipped him. Ricard came up from behind Jones, placed his leg in front of Jones' feet, and tripped him face-forward onto the ground. Jones landed on his chest/stomach.

### SHANNON TAYLOR

52.     Plaintiff Taylor's first personal experience with excessive force was when probation staff Balls opened Taylor's cell door, grabbed him from behind, and dipped him down onto the cell's concrete floor.

53.     Plaintiff Taylor's second experience with excessive force was when Taylor was wearing an "honor shirt." An honor shirt is awarded to juveniles who have a record of good behavior. A probation staff grabbed Taylor, placed his leg behind Taylor's legs, and slammed Taylor. Taylor landed on his buttocks. Probation staff then pulled the honor shirt off of Taylor and placed him in a solitary cell. Taylor remained alone in the solitary cell for four days.

10

### EMILY BOGGUS

54. Plaintiff Boggus' experience with excessive force was when she was being admitted to defendants' care. Probation staff was over-aggressive and bumped her onto the walls. She experienced soreness and bruises on her arms.

### STEVEN VEGA

55. Plaintiff Vega's first personal experience with excessive force was in boys ranch. On information and belief, probation staff Castanon grabbed the collar of Vega's shirt from behind. With his other hand, Castanon slammed Vega into a nearby wall repeatedly. Vega's right shoulder took the direct slamming and was extremely sore. Vega was handcuffed and taken to the medical staff. Medical placed a string sling on Vega's right arm. Vega still experiences pain in his right shoulder when he extends or pulls it.

56. Vega also experienced dipping and slamming as an "everyday thing." The excessive force usually came in three different forms: slamming kids up against a wall (like Vega experienced); dipping kids to the ground face-first; and/or dropping a knee on kids' backs when they were down on the ground being handcuffed.

### YEKATERINA ("KAT") KALMYKOV

57. Plaintiff Kalmykov's first experience with excessive force was during intake, right after being fingerprinted. Probation staff for no reason pushed Kalmykov up against the wall.

### GABRIEL SANTOYO

58. Plaintiff Santoyo's first experience with excessive force was during a talk with probation staff. Santoyo was told to "shut your mouth." Another probation staff came up from behind Santoyo and put his leg in front of him, and pushed him from behind, causing Gabriel to be dipped to the ground. The probation staff came down knee-first into Gabriel's back and cuffed him. Gabriel was taken to solitary for the rest of the night as punishment. His back was extremely sore following the incident, from where the PO's knee had pressed into his back. He kept requesting to go to medical, but was not allowed to go until the end of the day, after he was finally let out of solitary confinement. Medical said he was "ok" and sent him back to his room.

59. Santoyo's next experience with excessive force was when everyone on the yard was

maced.  Santoyo was an honor juvenile at the time.  A probation staff grabbed Santoyo from behind and dipped him onto the ground.  The right side of his body scraped along the ground as he went down.  He sustained scratches on the right side of his face, shoulder, ribs, and knees.  The probation staff then pushed his knee into Gabriel's back as he applied handcuffs.  He was immediately taken to a solitary cell where he remained for the rest of the day.  He continuously requested medical attention for his injuries, but was denied.

### ROBERT REMEL

60.     Plaintiff Remel's experience with excessive force was when probation staff would not allow him to use the bathroom in the mornings.  After numerous requests to use the bathroom, Remel had to defecate into a pillow case.  Probation staff came into his cell and dipped him.  He landed on his side.

### SAGE LOPEZ

61.     Plaintiff Lopez suffers from asthma attacks and is bipolar.  Plaintiff Lopez has been slammed against the window, causing a hairline fracture to his jaw.  He has been swung into a door causing him to bleed on the floor.  Probation staff has drilled their knees into his back and twisted his arms.  He has been placed in a splint due to excessive force by probation staff.  Probation staff Ressino has slammed Lopez on the basketball concrete floor causing injuries to Lopez' face.

### ANGELO MARTINEZ

62.     Plaintiff Martinez has been slam to the floor by probation staff Jose Cervantes.  Cervantes has drilled his knee into Martinez neck causing Martinez to almost faint.  Martinez cheek was bloody from the force used by Cervantes.  Probation staff picked up Martinez from the handcuff cause extreme pain to Martinez wrist.

63.     Probation staff Cabrillo has slammed Martinez into a cell bed causing Martinez to bleed.  Cabrillo has punched Martinez while calling him a "piece of shit!"  Cabrillo then twisted Martinez hand until Martinez cried that he could not feel his arm.  Cabrillo responded with, "that's because I'm going to break it!"

12

**CIVIL RIGHTS COMPLAINT; JURY TRIAL DEMANDED**
*Costa vs. County of Sacramento, et al.,* USDC, Eastern District, Case No.

### JOSEPH OROPESA

64. Plaintiff Oropesa has been pushed into a wall and dipped on his head by probation staff. He had his arm twisted by probation staff while on the ground.

### MARQUISE ZEIGLER

65. Plaintiff Zeigler was punched several times in the face by probation staff. Zeigler was then dragged face first down the stairs. Zeigler has also been kicked in the face by probation staff.

### JORDAN POLK

66. Plaintiff Polk was dipped by probation staff causing bleed along with rib and head injury.

### TONY JIMENEZ

67. Plaintiff Jimenez was dipped by probation staff.

### SHAHJAHEN SIDDIQUE

68. Plaintiff Siddique has been pepper-sprayed in his cell because he complained about a lack of programming causing juveniles to stay locked down. Siddique has been grabbed by the shirt and slammed against the wall by probation staff Balls while waiting to go and play basketball. Balls has pushed Siddique on the chest causing probation staff to laugh as Siddique was barely able to hold on to the end of a table to avoid falling. Siddique was a small skinny boy while Balls weighed over 300 pounds.

### Allegations Applicable to All Plaintiffs

69. The above described actions by defendants, and each of them, have caused and will continue to cause great humiliation, psychological, physical and emotional suffering, degradation, pain, injury, financial loss, and loss of liberty to plaintiffs.

70. At all times relevant hereto, defendants acted in concert to violate plaintiffs' civil and constitutional rights.

71. At all times relevant herein, Defendant County knew or should have known that

13

its agents committed civil rights abuses, including the use of unnecessary, disproportionate, and excessive force not limited to: 1) dipping youth residents of the detention facility by slamming, throwing, tripping, and pushing the residents into solid surfaces; 2) tackling, dragging, punching, swing, dumping and/or driving a knee on the juvenile's back side; 3) shooting high-concentration pepper spray directly into the faces of juveniles; and 4) failing to provide adequate health assessment and treatment before and after incidents of violence- for the purpose of and with the effect of inflicting cruel and unusual punishment on juvenile wards, including plaintiffs, in their custody.

72.   The wrongful acts described herein were inflicted under color of law and under color of official authority and/or in concert with or on behalf of those acting under color of official authority.

73.   The acts and injuries to plaintiffs herein were part of a pattern and practice of systematic violations of plaintiffs' civil and constitutional rights that were requested, paid for, confirmed and/or ratified by Defendant County and its agents.

74.   As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs have suffered and will continue to suffer harm, including pain and suffering, and extreme and severe mental anguish and emotional distress.

## VI.   FIRST CLAIM

**(Unnecessary, Disproportionate, and Excessive Force in Violation of
the Fourth and Fourteenth Amendments
to the U.S. Constitution on Behalf of Plaintiffs)**

75.   Plaintiffs reallege and incorporate herein by this reference each of the allegations of the preceding paragraphs of this complaint, as if fully set forth.

76.   In ordering, directing, approving, condoning, acquiescing in, and executing the pepper-spraying of plaintiffs, the dipping of plaintiffs, the physical removal of plaintiffs, and/or the use of excessive force against plaintiffs, the defendants and their agents and employees, and each of them, violated the prohibitions contained in the Fourth and Fourteenth Amendments to the United States Constitution against unreasonable search or seizure and due process of law as a result of which plaintiffs, and each of them, were injured as stated above.

14

## VII.   SECOND CLAIM

### (Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments to the U.S. Constitution on Behalf of Plaintiffs)

77.   Plaintiffs reallege and incorporate herein by this reference each of the allegations of the preceding paragraphs of this complaint, as if fully set forth.

78.   Defendants' unconstitutional policies, practices, and customs were the moving force in depriving plaintiffs of their rights, liberties, privileges, and/or immunities protected by the Eighth and Fourteenth Amendments to the United States Constitution.  The County's policymaker(s) acted with actual knowledge, constructive knowledge, and/or deliberate indifference to plaintiffs' constitutional rights.  Because rights under the federal and state Constitutions are federally protected, defendants violated plaintiffs' rights under 42 U.S.C. §1983.

79.   The rights enumerated under the Eighth and Fourteenth Amendments to the U.S. Constitution are clearly established and have been known to Defendant County at all relevant times.

## VIII.   THIRD CLAIM

### (Due Process Violations of the Fifth and Fourteenth Amendments to the U.S. Constitution on Behalf of Plaintiffs)

80.   Plaintiffs reallege and incorporate herein by this reference each of the allegations of the preceding paragraphs of this complaint, as if fully set forth.

81.   The unconstitutional policies, practices, and customs were the moving force in depriving plaintiffs of their rights not to have the government interfere with their familial society and companionship as guaranteed by Due Process under the Fifth and Fourteenth Amendments to the United States Constitution. The County's policymakers acted with actual knowledge, constructive knowledge, and/or deliberate indifference to plaintiffs' constitutional rights.  Because rights under the federal and state Constitutions are federally protected, defendants violated plaintiff's rights under 42 U.S.C. §1983.

82.   The rights enumerated under the Fifth and Fourteenth Amendments to the U.S.

Constitution are clearly established and have been known to said defendants at all relevant times.

## IX.   FOURTH CLAIM

### (Violation of the First Amendment to the United States Constitution)

83.   Plaintiffs reallege and incorporate herein by this reference each of the allegations of the preceding paragraphs of this complaint, as if fully set forth.

84.   By interfering, including through the use of excessive force, with plaintiffs' peaceful protest and petitioning for redress, the actions of defendants and their agents and employees, and each of them, violated the rights of plaintiffs and each of them guaranteed to them by the First Amendment to the United States Constitution and caused them on-going irreparable injury and damage, as stated above.

## X.   PRAYER

WHEREFORE, each and every plaintiff prays for judgment against defendants in excess of $75,000, as follows:

1.   Injunctive relief under federal law;
2.   Declaratory relief under federal law;
3.   Compensatory Damages under federal law;
4.   Punitive, Exemplary, and Statutory Damages under federal law;
5.   Attorneys' Fees under federal law;
6.   Costs under federal law; and
7.   Such other and further relief as to this Court may deem just and proper.

//
//
//
//
//

**CIVIL RIGHTS COMPLAINT; JURY TRIAL DEMANDED**
*Costa vs. County of Sacramento, et al.,* USDC, Eastern District, Case No.

## XI.   JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of plaintiffs, and all those they seek to represent.

DATED: November 19, 2012                    Respectfully Submitted,

                                                               LAW OFFICE OF MARK E. MERIN and
                                                               SIEGEL & YEE

                                                               By:   /s/ - "Jose Luis Fuentes"
                                                                               Jose Luis Fuentes
                                                                                Attorneys for Plaintiffs

**CIVIL RIGHTS COMPLAINT; JURY TRIAL DEMANDED**
*Costa vs. County of Sacramento, et al.,* USDC, Eastern District, Case No.